IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

EDNA L. HAWKS,                    )
                                  )
              Plaintiff,          )
                                  )
v.                                )          CIVIL ACTION NO. 5:08-00837
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of Social Security,  )
                                  )
              Defendant.          )

### M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security

denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 40 - 433, 1381-

1383f. This case is presently pending before the Court on the Plaintiff's Motion for Summary

Judgment (Document No. 12.) and the Defendant's Motion for Judgment on the Pleadings.

(Document No. 16.) Both parties have consented in writing to a decision by the United States

Magistrate Judge. (Document Nos. 7 and 8.)

The Plaintiff, Edna L. Hawks (hereinafter referred to as "Claimant"), filed applications for

DIB and SSI on February 9, 2004 (protective filing date), alleging disability as of March 29, 2003,

due to hand, elbow, and shoulder pain; lack of education; and loss of use of her right hand.[1] (Tr. at

78, 79-81, 90, 379-81, 392-94.) The claims were denied initially and upon reconsideration. (Tr. at

44-46, 54-56, 382-84, 387-89, 396-98, 401-03.) On May 5, 2005, Claimant requested a hearing

---

[1] On appeal, Claimant alleged the additional disabling impairments of back, bad nerves, and
pain in neck (Tr. at 54, 387, 401.)

before an Administrative Law Judge (ALJ). (Tr. at 59.) The hearing was held on March 7, 2006, before the Honorable Steven A. DeMonbreum. (Tr. at 512-60.) By decision dated April 27, 2006, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 21-33.) The ALJ's decision became the final decision of the Commissioner on May 21, 2008, when the Appeals Council denied Claimant's request for review. (Tr. at 9-12.) On June 13, 2008, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e),

416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2006). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a).[2] First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> (c) Rating the degree of functional limitation. (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently,

---

[2] As noted above, these Regulations were substantially revised effective September 20, 2000. See 65 Federal Register 50746, 50774 (August 21, 2000).

appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[3] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating

---

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

4

and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity at any time relevant to the decision. (Tr. at 24, Finding No. 4.) Under the second inquiry, the ALJ found that Claimant suffered from a history of bilateral carpal tunnel syndrome and trigger finger with release surgeries; bilateral impingement syndrome in shoulder with small rotator cuff tear in the left shoulder; degenerative disc disease L5-S1 (mild); depression; and anxiety, which were severe impairments. (Tr. at 24, Finding No. 5.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 28, Finding No. 6.) The ALJ then found that Claimant had a residual functional capacity for work at the light level of exertion, with the following limitations:

> [T]he claimant has the residual functional capacity to push, pull, lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; occasionally climb ladder, rope or scaffolds and crawl, but could frequently climb ramps/stairs, balance, stoop, kneel and crouch; some limitation in gross and fine manipulation of hands that she should avoid constant handling; she should avoid overhead reaching due to shoulder impingement; and she should avoid concentrated exposure to extreme temperatures, and hazards such as dangerous moving machinery and unprotected heights. Her mental impairments impact to the extent that due to difficulty maintaining attention and concentration for extended periods, the claimant would have difficulty understanding, remembering and carrying out detailed or complex job tasks. She would also have difficulty interacting with the public and supervisors and traveling in unfamiliar places or using public transportation.

(Tr. at 28, Finding No. 7.) At step four, the ALJ found that Claimant could not return to her past relevant work. (Tr. at 31, Finding No. 8.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a cleaner, office clerk, and file clerk, at the light level of exertion. (Tr. at 31-32, Finding No. 12.) On this basis, benefits were denied. (Tr. at 32, Finding No. 13.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the

6

record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was born on December 28, 1952, and was 53 years old at the time of the administrative hearing, March 7, 2006. (Tr. at 31, 79, 518.) Claimant had an eighth grade, or limited, education and was able to communicate in English. (Tr. at 31, 95, 518.) In the past, she worked as a short order cook, cashier, waitress, and nurse's aide. (Tr. at 31, 91-92, 100-03, 532-33, 549-50.)

<u>The Medical Record</u>

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant alleges that the ALJ's decision is not supported by substantial evidence because he erred in (1) discrediting the opinion of Claimant's treating psychiatrist, Dr. Ide; (2) discrediting Claimant's testimony regarding the effects of Claimant's pain; (3) assessing Claimant's residual functional capacity ("RFC"); and (4) presenting a hypothetical question to the VE. (Document No. 13 at 4-7.) The Commissioner asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Document No. 16 at 9-17.)

<u>Analysis</u>.

1. <u>Treating Physician Opinion</u>.

Claimant first alleges that the ALJ erred in discrediting the opinion of Claimant's treating

psychiatrist, Dr. Ide, because it conflicted with his own clinical observations contained in the report of Mr. Adams. (Document no. 13 at 5.) Claimant asserts that Mr. Adams however, saw Claimant on one occasion in a non-treatment evaluation, whereas Dr. Ide's observations were based on his treatment of Claimant for a sustained period of time. (Id.) Claimant further asserts that the ALJ selectively mentioned only a portion of Mr. Adams's findings, which demonstrated a moderate impairment. (Id.) Thus, there was "no real conflict between the findings of Mr. Adams and Dr. Ide since Dr. Adams was, at best, assessing the [Claimant's] ability to interact in a highly structured, formal setting on a one time basis. Dr. Ide was assessing the [C]laimant's ability to perform and her RFC in terms of her ability to perform work activities in an ordinary work setting on a regular and continuing basis." (Id. at 5-6.) Claimant also notes that the ALJ relied on definitions contained in the DSM IV, which are different than those definitions utilized by the Social Security Administration. (Id. at 5.)

The Commissioner asserts that the ALJ reasonably afforded little weight to Dr. Ide's psychiatric review technique and functional capacity assessment because they were internally inconsistent; unsupported by the objective medical evidence of record, including his own objective findings; and contradicted the opinions of the consultative psychologist, Mr. Adams, and the state agency psychiatrist, Dr. Binder. (Document No. 16 at 9-13.)

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the

"limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2006). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. § 416.927(e)(2) (2006).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in

the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2));

rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and

416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special

significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§

404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the

Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your

residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20

C.F.R. §§ 404.1545 and 416.946 (2006). However, the adjudicator must still apply the applicable

factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues

reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473

(1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the

adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical

source statement,' which is a 'statement about what you can still do despite your impairment(s)'

made by an individual's medical source and based on that source's own medical findings." Id. SSR

96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an

individual's medical source reflecting the source's opinion based on his or her own knowledge,

while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this

opinion and all the other evidence in the case record about what an individual can do despite his or

her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in

20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions."

Id. at 34474.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2006). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2006). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination

11

of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

The evidence of record reveals that Claimant initiated treatment at Southern Highlands Community Mental Health Center on September 22, 2004. (Tr. at 208-10.) An Initial Intake Assessment, completed by Joseph White, BSW, LSW, on that date, reflects Claimant's reports of crying three days a week due to pressure to remarry, but she had yet to get over her deceased

12

husband. (Tr. at 208.) She described her mood as good, but nervous. (Tr. at 210.) Mr. White observed a somewhat restricted affect, full orientation, and intact remote and recent memories, insight, and judgment. (Id.) He also noted that Claimant denied suicidal and homicidal ideations, but that she had a low self-concept. (Id.) On December 2, 2004, Claimant underwent a psychiatric evaluation by Dr. George B. Ide, D.O. (Tr. at 231-34.) Claimant reported problems with depression throughout most of her life, which worsened after her husband's death. (Tr. at 231.) Symptoms of depression included anhedonia, thoughts of death, poor sleep, tiredness, reduced energy, and poor concentration. (Id.) Mental status exam revealed that Claimant wringed her hands and that she had a mildly constricted affect. (Tr. at 233.) Her speech was goal directed and non-pressured, she admitted to paranoia, but denied any hallucinations. (Id.) She also admitted to thoughts of death, but denied suicidal ideations. (Id.) She was alert and oriented, her cognition was intact, she was attentive, had fair insight and intact judgment, and was of above average intelligence. (Id.) Dr. Ide diagnosed major depressive disorder, severe; and panic disorder with agoraphobia, and assessed a GAF of 55.[4] (Tr. at 233-34.)

On January 28, 2005, Kevin Adams, M.A., performed a consultative evaluation of Claimant. (Tr. at 235-40.) He observed that Claimant was cooperative, serious, and motivated. (Tr. at 235, 237.) Claimant characterized herself as nervous and worrying excessively, with some sleep disturbance. (Tr. at 236.) She reported a history of panic attacks and poor appetite, without any significant weight loss. (Id.) Claimant appeared appropriately dressed and well-groomed, and

---

[4] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has moderate symptoms, or moderate difficulty in social, occupational or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

exhibited normal speech that was clear in tone and was concise. (Tr. at 237-38.) She was oriented, depressed and tearful during the interview, and exhibited a flat affect. (Tr. at 238.) Her stream of thought was within normal limits, her thought content was mildly delusional, insight was within normal limits, psychomotor behavior was moderately retarded, and her judgment was markedly deficient. (Id.) Claimant reported fleeting thoughts of suicide with no active plans. (Id.) Immediate and remote memories were normal, recent memory was markedly deficient, concentration was moderately deficient, and persistence and pace were mildly deficient and slow. (Id.) Mr. Adams opined that Claimant's social functioning was moderately deficient. (Id.) He diagnosed panic disorder without agoraphobia and major depressive disorder, recurrent, moderate. (Tr. at 239.) He opined that her prognosis was poor, but that she was capable of managing her finances. (Tr. at 239-40.)

On February 1, 2005, Dr. Ide noted that Claimant interacted well, was cooperative, maintained direct eye contact, and exhibited a sad mood and constricted affect. (Tr. at 252.) Her speech was appropriate and goal directed, sleep was adequate, appetite was fair, energy was poor, and she denied suicidal or homicidal ideation. (Id.) Claimant's stream of thought was normal, logical, and goal directed; her content of thought was appropriate; her insight was fair and judgment was intact; she was oriented and cognitive; and her recent and remote memories were fair. (Tr. at 253.) Dr. Ide noted that her condition had improved with medications. (Id.) He continued his previous diagnoses, including a GAF assessment of 55. (Tr. at 252.) Claimant's mental status exam and diagnoses essentially remained unchanged on March 8, 2005. (Tr. at 249-50.)

Dr. James T. Binder, M.D., a state agency psychiatrist, completed a form Mental RFC Assessment on March 28, 2005. (Tr. at 270-73.) He opined that Claimant was moderately limited

14

in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and travel in unfamiliar places or use public transportation. (Tr. at 270-71.) Dr. Binder also completed a form Psychiatric Review Technique on March 28, 2005, on which he opined that Claimant's major depressive disorder and panic disorder with agoraphobia were non-severe impairments and resulted in mild limitations in activities of daily living; moderate limitations in maintaining social functioning, concentration, persistence, or pace; and resulted in no episodes of decompensation each of extended duration. (Tr. at 274-87.)

On June 28, 2005, Dr. Ide completed a form Medical Assessment of Ability to Do Work-Related Activities (Mental), on which he opined that Claimant had fair ability to perform the following activities: follow work rules, relate to co-workers, use judgment, function independently, maintain personal appearance, behave in an emotionally stable manner, and understand, remember, and carry out simple job instructions. (Tr. at 316-18.) Dr. Ide also opined that Claimant had poor ability to perform the following activities: deal with the public, interact with supervisors, deal with work stresses, maintain attention or concentration, demonstrate reliability, and understand, remember, and carry out complex and detailed job instructions. (Id.) He also opined that Claimant had no ability to relate predictably in social situations. (Tr. at 317.) Dr. Ide noted that Claimant had numerous symptoms of anxiety and depression, had panic attacks when under stress, and had poor concentration and short-term memory. (Tr. at 316-17.) Due to her anxiety, Dr. Ide opined that Claimant's behavior in social situations would be unpredictable. (Tr. at 317.) Due to her anxiety, low energy, and decreased interest in goal-directed activity, he also opined that her reliability would

15

be poor regarding employment. (Id.) Dr. Ide also completed a form Psychiatric Review Technique on June 28, 2005, on which he opined that Claimant's affective and anxiety-related disorders met Listings 12.04 and 12.06. (Tr. at 319-32.) He also opined that Claimant's mental impairments resulted in marked limitations in maintaining activities of daily living, concentration, persistence, and pace; extreme limitations in maintaining social functioning; and four or more episodes of decompensation, each of extended duration. (Tr. at 329.)

On October 20, 2005, Dr. Ide noted on mental status exam that Claimant interacted well, maintained direct eye contact, exhibited an appropriate affect and speech, that her sleep was adequate, but that her appetite and energy were poor, that she denied suicidal or homicidal ideation, that she had normal and appropriate stream and content of thought, fair insight and judgment, was oriented, and had poor recent and remote memories. (Tr. at 362-63.) Nevertheless, Dr. Ide noted that Claimant's conditions had improved with medication. (Tr. at 363.) Finally, on December 2, 2005, Dr. Ide again noted that Claimant interacted well and maintained direct eye contact, was anxious, exhibited appropriate speech, reported adequate sleep and a baseline appetite, denied suicidal or homicidal ideation, had normal and appropriate stream and content of thought, had good insight and judgment, was oriented, had baseline cognition, and exhibited good recent and remote memories. (Tr. at 372-73.) Despite the improved mental status exam, Dr. Ide noted that Claimant's condition was worse. (Tr. at 373.)

In his decision, the ALJ summarized the evidence of record regarding Claimant's mental impairments, including the opinion evidence. (Tr. at 25-28, 30.) Regarding Dr. Ide's opinions, the ALJ accorded them little, if any, weight because they were not supported by the objective medical evidence, were not explained adequately by Dr. Ide, and were inconsistent with the record as a

16

whole. (Tr. at 31.) Though Dr. Ide assessed many marked limitations, he also assessed a GAF of 55-60, which was indicative of only moderate symptoms. (Tr. at 30.) Furthermore, though Dr. Ide assessed severe impairments in concentration and mood, his exam reports did not reflect such severe limitations. (Id.) The ALJ noted that Mr. Adams's opinion directly conflicted with Dr. Ide's assessment. (Id.) Specifically, Mr. Adams assessed moderate reduction in social functioning whereas Dr. Ide assessed no useful ability to relate predictably in social situations. (Id.) Mr. Adams also assessed moderate reduction in concentration, whereas Dr. Ide assessed marked difficulties in maintaining concentration. (Id.) Finally, the ALJ noted that opinions as to disability were reserved to the Commissioner. (Tr. at 31.)

The undersigned finds that the ALJ properly considered Dr. Ide's opinions pursuant to the rules and regulations, and adequately explained his reasons for according little, if any weight to his opinions. As the ALJ found, Dr. Ide's opinions were internally inconsistent. The ALJ properly noted the inconsistencies between Dr. Ide's assessed marked limitations and the GAF scores of 55, indicating only moderate symptoms or difficulty in functioning. As the Commissioner notes, Dr. Ide also rated Claimant's ability to understand and remember complex or detailed instructions as poor based on his opinion that her short-term memory was poor, but that his treatment notes generally indicated good or fair memory. As the Commissioner further points out, Dr. Ide opined that Claimant was extremely limited in social functioning and had an inability to relate predictably in social situations. Nevertheless, he consistently found in his treatment notes that Claimant was cooperative, attentive, interacted well, and opined that she could relate to co-workers and behave in an emotionally stable manner. Thus, the ALJ properly found that Dr. Ide's opinions were inconsistent with his treatment notes and other aspects of his assessments.

The ALJ also found that Dr. Ide's opinions were inconsistent with and unsupported by the other objective medical evidence of record, including his own objective findings. (Tr. at 30-31.) These findings are reflected in the summary of the evidence above. Finally, the ALJ found that Dr. Ide's opinions contradicted the opinions of Mr. Adams, and it also conflicted with the opinions of Dr. Binder, which the ALJ accorded great weight. (Tr. at 30-31.) As the ALJ noted, and as discussed above, Mr. Adams determined that Claimant had only moderate limitations in maintaining social functioning, concentration, persistence, or pace, as did Dr. Binder. The ALJ already had determined that the opinions of Mr. Adams and Dr. Binder were more consistent with the overall evidence of record than was Dr. Ide's, and therefore, accorded their opinions greater weight.

Accordingly, based on the foregoing, the undersigned finds that the ALJ properly considered Dr. Ide's opinions pursuant to the rules and regulations and that his decision to accorded them little, if any, weight is supported by substantial evidence.

2. Pain and Credibility Assessment.

Claimant next alleges that the ALJ erred in using Dr. Ide's opinion as a basis to discredit Claimant's testimony regarding the effects of her injuries. (Document No. 13 at 6.) Claimant asserts that "there is nothing in the record of the claim that would undermine the [Claimant's] testimony regarding the effects of her impairments except the ALJ's predetermination to discredit the reports of her treating physician." (Id.)

The Commissioner asserts that the ALJ's finding as to Claimant's credibility was reasonable in light of the objective medical evidence. (Document No. 16 at 13-16.) The Commissioner asserts that though Claimant "suggests that the ALJ made his credibility determination solely on his rejection of Dr. Ide's opinion, the ALJ clearly considered [Claimant's] allegations regarding, not

only her alleged mental limitations, but also her physical limitations." (Id. at 14.) Regarding Claimant's mental impairments, the Commissioner asserts that based on the benign objective findings of her treating physicians and the opinions of Mr. Adams and Dr. Binder, the ALJ properly determined that Claimant's mental limitations were not as extreme as she alleged. (Id.) Nevertheless, the ALJ precluded her from performing work that required her to understand, remember, or carry out complex instructions and that required her interaction with the general public or supervisors. (Id.) The Commissioner asserts that the ALJ also found that Claimant's allegations of functional limitations due to physical impairments contradicted the medical evidence of record. (Id.) Furthermore, the Commissioner notes that the ALJ considered Claimant's activities of daily living, which undermined her alleged functional limitations. (Id. at 15.) Finally, the Commissioner asserts that the ALJ considered Claimant's inconsistent statements in assessing her credibility. (Id. at 16.)

A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged.  20 C.F.R. §§ 404.1529(b) and 416.929(b) (2006); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated.  Id. at 595.  When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative.

Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.  20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2006).  Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . .  Factors relevant to your symptoms, such as pain, which we will consider include:
>
>> (i) Your daily activities;
>>
>> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>>
>> (iii) Precipitating and aggravating factors;
>>
>> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>>
>> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>>
>> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>>
>> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2006).

> SSR 96-7p repeats the two-step regulatory provisions:
>
>> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the

20

impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations.  A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply

because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 28-29.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (Tr. at 29.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 29-30.) At the second step of the analysis, the ALJ concluded that Claimant's "statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (Tr. at 29.)

The Court finds that the ALJ properly considered the factors under 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4), in evaluating Claimant's pain and credibility. Though the ALJ did focus upon the opinions of Dr. Ide in assessing Claimant's credibility, he also considered the appropriate factors under the regulations, as well as the other objective evidence of record.

The ALJ acknowledged Claimant's complaints of back and leg pain, and her ability to sit, stand, or walk for up to twenty minute intervals due to back pain. (Tr. at 28.) The ALJ also noted Claimant's allegations that bending, stooping, or twisting increased her back pain. (Id.) The ALJ thus noted the nature and location of Claimant's impairments, and further noted Claimant's alleged

22

limitations. The ALJ noted that Claimant successfully underwent surgery on her back and that she was being treated conservatively with prescription medications for her back and leg pain. (Tr. at 28.) The ALJ also noted that Claimant had undergone physical therapy, stretching, conditioning, injections at a pain clinic, use of a TENS unit, and further medications for pain. (Tr. at 26.) Claimant testified that she did not experience any side effects from her medications. (Tr. at 458.) The ALJ acknowledged Claimant's allegations that she did not like to be around people and was depressed. (Tr. at 29.) The ALJ accommodated Claimant's mental impairments, noting her difficulty maintaining attention and concentration, by limiting her to jobs that did not require her to understand, remember, and carry out detailed or complex job tasks and that limited her interaction with the public and supervisors. (Tr. at 28.)

The ALJ noted that Claimant's allegations of functional limitations due to physical impairments were unsupported by the medical evidence of record. (Tr. at 29.) Specifically, the ALJ noted that the evidence did not support an inability to work due to Claimant's hand impairment. (Tr. at 25.) The ALJ properly summarized the medical evidence, which indicated that Claimant had full grip and no triggering or numbness in her left hand and good range of motion. (Tr. at 29.) The ALJ noted that the evidence conflicted with Claimant's allegations of very little grip strength, continued numbness and tingling in her hands, and lack of strength in her hands. (Id.) Regarding Claimant's shoulder impairment, the ALJ properly accommodated Claimant's limitations by finding that she should not reach overhead. (Tr. at 28.)

The ALJ also considered Claimant's activities of daily living. (Tr. at 29-30.) He noted that Claimant did light housework, watched television, occasionally drove to her mother's house, drove to the grocery store, did laundry, folded laundry, cooked occasionally, and washed dishes. (Id.) The

ALJ noted Claimant's reports to Dr. Adams that she did light housework, visited her mother, did not exercise, required help showering and dressing at times, required help cooking and grocery shopping, that she did not read, and that she primarily watched television. (Tr. at 30.) She further reported that she occasionally drove, did light housecleaning, and occasionally vacuumed, but was unable to bend and lift heavy items due to back pain. (Id.) Accordingly, it is clear that the ALJ properly considered Claimant's credibility pursuant to the rules and regulations and did not base his assessment solely upon Dr. Ide's opinions as alleged by Claimant. The undersigned therefore finds that the ALJ's pain and credibility assessment is supported by substantial evidence.

3. Residual Functional Capacity Assessment and Vocational Expert Testimony.

Finally, Claimant alleges that because the ALJ did not accept Dr. Ide's opinion and Claimant's subjective complaints, the ALJ erred in assessing her RFC and presenting hypothetical questions to the VE. (Document No. 13 at 6-7.) The Commissioner asserts that the evidence of record neither supported Dr. Ide's opinion nor Claimant's subjective complaints, and therefore, the ALJ was not required to include those limitations in the RFC assessment or in the hypothetical questions to the VE. (Document No. 16 at 17.) The Commissioner further asserts that "[b]ecause the ALJ's hypothetical question to the VE fairly set forth all of [Claimant's] limitations that were supported by the record, the VE's testimony regarding the existence of jobs that [Claimant] could perform constitutes substantial evidence supporting the ALJ's conclusion that [Claimant] was not disabled within the meaning of the Act." (Id.)

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult

to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

SSR 00-4p, which became effective December 4, 2000, and was in effect at the time of the administrative hearing in 2007, states that before an ALJ can rely on Vocational Expert testimony, he or she must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by the vocational expert and information contained in the DOT and explain in the determination or decision how any conflict that has been identified was resolved. Social Security Ruling 00-4p, 2000 WL 1898704 (December 4, 2000).

In the ALJ's hypothetical questions to the VE, he included all of Claimant's impairments that were supported by the record. (Tr. at 550-56.) The ALJ first asked whether a person of Claimant's age, education, and past relevant work experience, who was limited to performing work at the light level of exertion and frequently could climb ramps and stairs, balance, stoop, kneel, and crouch, but could only occasionally climb ladders, ropes, and scaffolds, and crawl; required an avoidance of concentrated exposure to temperature extremes and hazards; and should avoid continuous use of the hands in the work setting, could perform any work. (Tr. at 551.) In response to the ALJ's hypothetical, the VE responded that such person could perform Claimant's past relevant work as a

25

short order cook, cashier, and waitress. (Id.) The ALJ then asked whether any of the jobs identified would be altered with the inclusion of mental limitations to include difficulty maintaining attention and concentration for extended periods of time such that the individual should avoid detailed or complex job instructions, difficulty interacting appropriately with the general public and to accept instruction or respond appropriately to criticism from supervisors, and to travel to unfamiliar places or use public transportation. (Tr. at 551-52.) The VE responded that such limitations would exclude the waitress and cashier jobs, but would permit the performance of the short order cook job. (Tr. at 552.) The VE identified other jobs to include light, unskilled jobs as a kitchen worker, laundry worker, domestic cleaner, and vehicle and equipment cleaner. (Tr. at 552-53.) The ALJ further asked whether any of these other jobs identified would be altered if the individual should avoid overhead reaching. (Tr. at 553.) The VE responded that such a limitation would exclude the vehicle and equipment cleaner job. (Id.) The VE identified other light, unskilled jobs with the overhead reaching limitation to include general office clerk and file clerk. (Tr. at 554.) Finally, the ALJ asked whether an individual with the limitations contained in Dr. Ide's opinion could perform any work. (Tr. at 554-56.) The VE responded that such an individual could not perform any of Claimant's past relevant work or any other work. (Tr. at 556.)

As the Commissioner points out, and as discussed above, Dr. Ide's extreme limitations were not supported by the substantial evidence of record. Consequently, the ALJ, though he included them in his hypothetical questioning to the VE, was not required to include them in his RFC assessment. Likewise, as discussed above, the ALJ's decision that Claimant was not entirely credible is supported by substantial evidence, and therefore, the ALJ was not required to include every subjective allegation in his hypothetical questioning to the VE or in his RFC assessment. The

26

transcript demonstrates that the ALJ included all of Claimant's impairments that were supported by the record in his hypothetical questioning to the VE and in his RFC assessment. Accordingly, the undersigned finds that the ALJ's RFC assessment and his reliance on the VE testimony is supported by substantial evidence of record and that Claimant's arguments in these regards are without merit.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment (Document No. 12.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 16.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 30, 2009.

R. Clarke VanDervort
United States Magistrate Judge